## Hutchings v. McLaughlin.

(Decided September 19, 1912.)

### Appeal from Logan Circuit Court.

Contracts.—Where a real estate broker entered into a contract by which he agreed to divide a tract of land into lots of specified dimensions and sell the same at a specified price, he could not maintain an action against the owner for obstructing him in the sale of the lots, when it appeared that he was not attempting to and could not divide the land into lots of the dimensions specified in the contract.

BROWDER & BROWDER for appellant.

S. R. CREWDSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On May 15, 1911, the appellee McLaughlin, who owned a tract of land near Russellville, Kentucky, submitted in writing the following proposition to the appellant Hutchings, which was accepted:

"I this day place with G. B. Hutchings, of Russellville, Ky., real estate agent, for sale on commission, all that part of the Briggs Meadow property in Russellville, Logan County, Ky., purchased by me from Mrs. W. C. Hall and others, and lying near the proposed new passenger station, at the junction of the O. & N. and L. & N. railroad, and which lies on the eastern side of the street or roadway leading from Hopkinsville street on

the south to the right-of-way of the Memphis line of the L. & N. railroad, opposite the Cornelius property, upon the following terms: Said Hutchings is to have said property cut up into lots 50 by 150 feet, making, it is supposed, about 30 or 31 lots in all of the size indicated above, and I am to receive out of the proceeds of the sale of said lots when sold by him enough of the purchase price to make said lots average me $150 each net; said Hutchings being hereby authorized to retain as his commission for his services in making said sales all money in excess of said average of $150 per lot. Said Hutchings is to make each purchaser pay $50.00 in cash for each lot, and execute his three notes for the balance of said purchase money, one note to be for $25.00, one for $75.00, which said notes are to be given to me by the said Hutchings, and the third note on each lot is to be made payable to and to be the property of said Hutchings. Enough land is to be reserved out of the above to permit the city to extend Pearl street and Barkley street from their present termini to the O. & N. right-of-way. Lot No. 1, next to the John Neal property, is not embraced in this agreement.''

In August, 1911, Hutchings filed his petition in equity against McLaughlin, in which after setting out the contract, he averred that—

''Pursuant to said contract, he proceeded to take charge of said property, advertise same extensively, and to have the same surveyed out, and laid off in said lots, as therein provided, and that when said survey was made it appeared that in view of the shape of said land, it was impossible to make the said lots 150 feet deep, and therefore it was necessary in laying off said lots in order to make same desirable and attractive to the purchaser, that the depth be varied, and that some of same were 150 feet deep, and some 125 feet deep, and some 100 feet deep; and that said Hutchings proposed and still proposes to realize for said McLaughlin $150 per lot, regardless of the depth of same.''

He further averred that he had a reasonable time in which to carry out the contract, make the survey, lay off the lots and find purchasers for same, and that he had found purchasers for some of the lots, who were able and willing to pay for certain of them a sufficient amount of money to net McLaughlin the price named in the contract; but that when he had found the purchasers,

McLaughlin repudiated the contract and would not execute deeds of conveyance.    He further averred that McLaughlin had broken his contract and was threatening to sell the lots independent of the plaintiff, and had sold some of them and made deeds therefor.    That in violation of the contract, McLaughlin had sold 120 feet fronting on Hopkinsville street, worth $1,200, and that under the contract, McLaughlin was entitled of this sum to $360.00, and Hutchings to the remainder, $840.00. He prayed for judgment for $840.00, and that McLaughlin be enjoined from selling or disposing of any of the lots and from interfering with his right to do so.

In an amended petition, he averred in substance that in pursuance of the contract, he was having the land surveyed and the lots laid off, and had provided for the extension of the two streets sixty feet in width across the land, but that the shape of the land was such that not more than 15 lots, 50 by 150 feet, could be laid off, that if it was attempted to cut the land up into lots of this size, there would be a large area that could not be made into lots of this size, and that would be left in an unsalable condition.    That in view of this and in order to make approximately thirty lots, he had the land surveyed in such a way that some of the lots were not 50 by 150, but that he could dispose of the lots irrespective of the depth thereof, so that McLaughlin would realize $150.00 for each of them.    He further averred that if the court is of the opinion that under the contract no lots could be laid off of less dimension than those specified in the contract, that he was willing to have the land cut up into as many lots, 50 by 150 feet, as it would make, and to dispose of the same on the terms and conditions designated in the contract.

To the petition as amended, a general demurrer was sustained, and declining to plead further, the petition was dismissed, and this appeal prosecuted.

The rights of the parties to this controversy are to be determined by the contract they entered into.    By its terms, Hutchings agreed to divide the property into about 30 or 31 lots, 50 by 150 feet, to sell the lots at an average of $150.00 each, and was to have for his commission the excess over this amount realized from the sale of each lot.    It appears from the petition that Hutchings discovered that the land could not be divided into lots of the dimensions specified in the contract, and

upon realizing this fact, he proposed to cut the property up into lots of less dimensions than he was authorized to do. If the contract was impossible or impracticable of performance on the part of Hutchings, there was no obligation on his part to attempt to perform it. He had no authority to divide the property into lots of different dimensions from those specified in the contract; and, as his pleading admits that he was not attempting to, and could not comply with the terms of the contract, we do not think he had any ground of action against McLaughlin for failing or refusing to permit him to do certain things that he was not authorized to do by the contract.

The question of reasonable time is not involved in this case. No matter how much time Hutchings may have been allowed, he could not divide the land in accordance with the terms of the contract, and consequently could not have performed his part of it. McLaughlin did not interfere with or obstruct Hutchings in the performance of the contract, because Hutchings was not attempting to observe its conditions; he only declined to aid Hutchings in his effort to dispose of the lots in a manner different from that specified in the contract. Hutchings' complaint seems to be based on the theory that McLaughlin should be made accountable to him because he was unable to perform his part of the contract, although it does not appear that McLaughlin has failed or refused to do anything that he agreed to do by the terms of the contract.

Wherefore, the judgment is affirmed.